J. J. Tonella and Grace M. Tonella v. Commissioner. Grace M. Tonella v. Commissioner. Estate of H. B. Garden, Deceased, Walter F. Jones, Executor v. Commissioner.
Tonella v. Commissioner
Docket Nos. 110800, 110801, 110881.
United States Tax Court
1943 Tax Ct. Memo LEXIS 356; 1 T.C.M. (CCH) 906; T.C.M. (RIA) 43173; April 19, 1943
*356 William H. Moberly, C.P.A., and Vincent A. Smith, C.P.A., 307 Wheeler Kelly Hagny Bldg., Wichita, Kans., for the petitioners. M. Frank Gibbs, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: These proceedings, consolidated for hearing, involve income tax deficiencies as follows: Docket
Defi-
No.
Petitioner
Year
ciency
110800
J. J. Tonella and Grace
M. Tonella
1939
$203.80
110801
Grace M. Tonella
1938
366.08
110881
Estate of H. B. Garden,
Deceased, Walter F.
Jones, Executor
1938
626.16
The question presented is who, if anyone, is liable to income tax for 1938 and 1939 upon certain oil payments paid out of production pursuant to a contract of sale of oil and gas leases. The respondent claims that Grace M. Tonella (formerly Grace M. Garden), who received the payments under the terms of a divorce decree, is liable to income tax upon them. The determination of a deficiency against the estate of H. B. Garden for 1938 was made out of an abundance of caution. In no event did the estate have a liability to income tax for 1939. The Court adopts the stipulation of facts filed by the parties in these proceedings as its findings of fact. [ *357 The Facts] J. J. Tonella is the husband of Grace M. Tonella, who, prior to October 14, 1937, was the wife of H. B. Garden, Hutchinson, Kansas. Tonella and his wife reside at Marquette, Michigan. Her income tax returns for 1938 and 1939 were filed with the collector of internal revenue for the district of Kansas. H. B. Garden filed his income tax return for 1938 with the collector of internal revenue for the district of Kansas. He died on January 5, 1942. The petition in Docket No. 110881 was filed by Walter F. Jones, the executor of his estate. On September 20, 1937, H. B. Garden and his associates in a partnership known as Nickerson Petroleum Co. sold their interests in certain oil and gas leases as of September 1. The wives of the vendors signed the contract of sale. Consideration was to be a cash payment of $508,032.20 plus the price and value of certain supplies and equipment plus an additional payment of $1,050,000 to be paid out of one-half of the oil and gas as, if, and when produced from the property on and after September 1, 1937. The vendees had no liability for such additional payment except out of production. Under date of September 27, 1937, the vendors stipulated *358 and agreed among themselves upon the distribution of monies to be received from the sale. It was provided that H. B. Garden should receive $25,498.05 of the cash payment and $54,058.08 of the "oil payments." Prior to September 1, 1937, Grace M. Tonella had instituted suit for divorce from her husband, H. B. Garden, in the District Court of Butler County, Kansas. By decree of the court dated October 14, 1937, the parties were divorced and the wife was awarded approximately onehalf of the property of her husband of a value stated by the court to be $148,520.90. This amount included, among other things, "all of the interest of the defendant, Harry B. Garden, in the Nickerson Petroleum contract valued at $62,421.90." On October 15, 1937, H. B. Garden, pursuant to the provisions of the court decree, assigned all of his right, title, and interest in and to the Nickerson Petroleum Co. sales contract to Grace M. Garden, who, on October 26, 1937, received $25,498.05 cash and subsequently received up to December 31, 1939, the following amounts: During 1937
$2,426.07
During 1938
5,495.88
During 1939
4,407.32
Neither Grace M. Tonella nor her divorced husband, H. B. Garden, reported *359 any income from the oil payments in 1938 or 1939. The respondent has added to the net income reported by Grace M. Tonella the amount of the oil payments received by her less 27 1/2 percent as a depletion allowance. Out of an abundance of caution he has also taxed the same receipts to H. B. Garden. This was upon the theory that if one was not taxable upon the receipts, the other was. [Opinion] It is contended on behalf of Grace M. Tonella, hereinafter referred to as petitioner, that none of the payments which she received under the Nickerson Petroleum Co. sales contract can be taxed to her until she has received $62,421.90, the amount at which the contract was valued in the court's award. , and , are cited in support of this contention. In , it was held that "oil payments" reserved in sales of mineral rights were not includable in the gross income of a testamentary beneficiary until the value at which they were included in the testator's gross estate had been returned. *360 On the other hand "oil royalties" were held taxable to the beneficiary, subject only to depletion allowances. In , we followed the Laird case holding that the oil payments which the taxpayer received under his father's will were a part of his inheritance and were therefore exempt from tax under section 22 (b) (3) of the 1936 Act. Oil royalties similarly received by him were held includable in his gross income subject to depletion allowances. In ; affirming , the court overruled its earlier decision in the Laird case saying: * * * The administrative and legal view and treatment of oil payments as to cost recovery, has little by little more closely identified them with oil royalties, until the resemblances between the two have outweighed the differences and it has been finally determined as to them both; that taxpayers make capital investments in oil and gas in place, alike whether they acquire royalties or oil payments; that the production of oil and gas, for the benefit of royalty and *361 oil payment owners is an income producing operation, not a conversion of capital investment; and that as to each, for the recovery of cost, depletion must be alone looked to. ; ; ; . It being the accepted view now that the receipts of oil payments are the result of an income producing operation, and not of one which merely returns capital, it follows that the theory on which the Laird case was rested, that the receipts of oil payments were returns, not of income, but of capital, has fallen and that the case must be regarded as overruled. The order of the Board was right. It is affirmed. Since the distinction between oil royalties and oil payments made in the Laird and Hickman cases is no longer recognized, petitioner's reliance upon those cases must fail. In any event, the facts of record do not afford any basis for support of petitioner's contention that she can not be taxed on the *362 oil payments received by her during the taxable years until they exceed the valuation placed on the contract in the court's award. The evidence before us does not show the basis of the property settlement between her and her divorced husband. We do not know whether the total amount of her award, including the valuation placed on the Nickerson contract, represented her lawful share of her and her husband's commingled estates, whether it was in whole or in part damages for breach of the marital contract, whether it was in lieu of alimony, or whether it was a gift. It is said in petitioner's brief that "the practical side of the entire situation" was that the divorced husband was unable to pay "the amount awarded petitioner by the Court in cash" and that the court therefore awarded petitioner "specific properties of a designated value in lieu of cash." The evidence of record does not show that the court ever made any cash award to petitioner or that the Nickerson contract was awarded to her in lieu of cash. The factual situation here, at best, places the petitioner in no more favorable position with respect to the income from the oil payments in question than were the taxpayers *363 in the Laird and Hickman cases with respect to their inherited oil royalties. We think that the respondent correctly included the oil payments which petitioner received from the contract in 1938 and 1939 in her gross income for those years. As a corollary, we find that the estate of H. B. Garden, deceased, petitioner in Docket No. 110881, is not liable for any income tax on the payments which were received by petitioner Grace M. Tonella in 1938. Cases like , and , cited by petitioner, have no application here. There was no gift or assignment by Garden of the income from the contract. Under the court's award all of his rights and interests in the contract were irrevocably taken from him and vested in petitioner. Petitioner further contends in the alternative that she is entitled to depletion deductions computed on a cost basis of $62,421.90, the value placed on the contract in the court's award, less the $25,498.05 cash which she received on October 26, 1937. That contention must likewise fail for the reason, if for no other, that the evidence *364 does not show the cost basis of her interest in the contract. We cannot assume that the value placed on the contract by the court at the time of its award to petitioner was its cost basis to her. In the circumstances we think that respondent correctly computed petitioner's depletion deductions on the percentage basis. Decisions will be entered for the respondent in Docket Nos. 110800 and 110801, and decision of no deficiency will be entered in Docket No. 110881.